GILLETT vs. TREGANZA and another.

GILLETT
v.
TREGANZA et al.

A died intestate in possession of a certain tract of land belonging to the U. S., which he claimed as mineral land. Afterwards, in 1854, B purchased of the U. S. said tract and others claimed as mineral lands, under an arrangement with the respective claimants that he should take the title in his own name, that each should furnish money to pay for the land claimed by him, and that B should convey to each. B purchased the tract in question with money of A's estate, furnished for that purpose by C, the administrator (who was also one of the heirs), and in 1856 conveyed said tract to C, as administrator. *Held*, that the *legal* title to the land was in C, and not in the heirs.

One of the heirs having obtained from six of his co-heirs, conveyances of their interests in said land, was, upon petition to the county court of the county where the land is situate, adjudged to be the owner of seven-elevenths of the land, which undivided seven-elevenths were by said decree assigned to him. *Held*, that the decree of the county court, at most, only ascertained and declared the shares to which the several heirs were entitled, but did not transfer or change the *legal* title to the land.

What would have been the effect upon the title, under section 18, chapter 72, R. S. 1849, if a decree of *partition* had been made by the county court, the administrator and trustee being one of the heirs and a party to the proceeding, is a question which does not arise in the case, and is not determined.

A person having the *legal* title to land may have a temporary injunction, restraining a party in possession of it from committing waste during the pendency of an action either of ejectment or of waste, or of an equitable action for a perpetual injunction against the commission of such waste.

The equitable owner of land may, in a proceeding addressed to the *equity* powers of the court, ask its aid to stay the commission of waste, and this aid may be granted by virtue of the general authority of a court of equity, or under section 2, chapter 129, R. S. 1858.

But actions of waste and ejectment, being legal remedies, must be brought by the persons having the legal title, and cannot be maintained by a *cestui que trust*, or other person having only the equitable interest.

In actions brought since the adoption of the Code, it is a general rule that the nature of the action is to be determined by the prayer for relief; and this rule may be safely adopted in cases of doubt, and in cases where the pleader, conceiving himself to be entitled to prosecute either of several actions, has so stated his facts as to leave it uncertain which he intended to pursue.

Where the complaint demands the recovery of land or damages for acts of waste committed upon it, and asks also for a *temporary* injunction to restrain the commission of such acts until the further order of the court, but does not ask for a *perpetual* injunction as a measure of permanent relief, and it appears from the complaint that the plaintiff has only an equitable interest the land but not the *legal* title, he is not entitled to such temporary injunction. The legislature did not intend that temporary injunctions should be issued where it is evident from the plaintiff's own statements that he cannot maintain the action, and that no final judgment in his favor can be had.

APPEAL from the Circuit Court for *La Fayette* County. The facts alleged in this case are in substance as follows:

January Term,
1861.

GILLETT
v.
TREGANZA et al.

In 1848 one Benoni R. Gillett died intestate, leaving the plaintiff, *William W. Gillett*, with eight brothers and two sisters, his only heirs at law.   At the time of his death, said Benoni was in possession of, and claimed as mineral lands, the whole of the tract in question, the title to the same being in the U. S.   In 1852, Philo Gillett was duly appointed administrator *de bonis non* of said Benoni.   In 1854, the tract in question, and others claimed as mineral lands, were offered for sale by the U. S. government, and one Crawford became the purchaser and took the title thereto, under an arrangement with the claimants that each of them should furnish sufficient money to pay for the land claimed by him, and that Crawford should afterwards convey to each the land by him claimed.   Philo Gillett furnished Crawford the money to pay for the tract in controversy out of moneys belonging to said estate.   In 1856, Crawford conveyed said tract to Philo Gillett as such administrator; and the complaint alleges that said Philo thereby became possessed of the legal title, in trust for the heirs of said Benoni.   The plaintiff, in 1854, purchased the shares of said estate owned by six of the other heirs.   In 1857, the county court of La Fayette county, on petition of the plaintiff, made an order declaring him to be the owner by purchase, of six-elevenths, and by inheritance, of one-eleventh of said estate, including the tract in controversy, and that the undivided seven elevenths of the same were thereby assigned to him.   On the 15th of March, 1858, the defendants were in possession of a portion of said tract, and were digging and committing waste thereon; and the plaintiff, on that day, caused a written demand to be served on them, requiring them to quit digging, &c., but they still continued, at the time of the commencement of this action, to unjustly hold possession of the premises and commit waste thereon. Subsequently to this demand, the plaintiff purchased the interest of another of the heirs in said land.   In May, 1860, the plaintiff served upon the defendants another demand and notice similar to the above.   The complaint demanded that the defendants might be restrained from further digging on any part of said premises, and from removing any ore or

January Term, mineral therefrom, or in any manner interfering therewith, *un-*
1861.
*til the further order of the court;* and that the plaintiff might
GILLETT      recover from the defendants the undivided eight-elevenths
v.
TREGANZA et al. of said piece of land, and all damages by him sustained by
occasion of the premises.

The county judge of La Fayette county granted a tempo-
rary injunction according to the prayer of the complaint.
The defendants demurred to the complaint, on the ground
that it showed the legal title to the land in question to be
in Philo Gillett, and not in the plaintiff, and that it did not
state facts sufficient to constitute a cause of action. After-
wards the circuit court, on motion of the defendants, made
an order dissolving said injunction, from which order the
plaintiff appealed.

*Sleeper & Norton,* for appellant, made the following,
among other points:   1. The purchase with trust funds, by
the administrator *de bonis non,* and the conveyance to him as
administrator, created the relation of trustee and *cestui que
trust,* and the statute of uses and trusts executed it *eo in-
stanti,* and vested in each of the *cestuis que trust,* " a legal right,
cognizable as such in the courts of law."   R. S., 1849, chap.
57, secs. 1 to 9, and chap. 69, secs. 12–15 ; *In the matter of
DeKay,* 4 Paige, 403.   2. Whether this be so or not, the or-
der of the county court assigning seven-elevenths of this
land to the plaintiff, not only declared the title to be in him,
but vested in him at once the right of possession as against
the administrator ; and as against these defendants, no such
decree was necessary, unless they showed that they were in
possession under the administrator.

*Crawford & Simpson,* for respondents.   [No argument on
file.]

April 10.      *By the Court,* DIXON, C. J.   If we could concede that the
appellant's counsel are correct in their position that the facts
stated in the complaint show the legal title of the land in
question to be in the appellant, it might then be unnecessary
for us to inquire into the true nature and object of the pres-
ent action.   For if that position were correct, such inquiry
would be immaterial, inasmuch as the restraining of the

commission and continuance of the acts of waste, of which
complaint is made, pending the litigation, would be an ap-
propriate means of relief, whatever might be the particular
form of the action.   If it were an action of waste, it could
be properly granted under section 7 of chapter 143 of the
Revised Statutes, or under section 2 of chapter 129 ; if an
action for the recovery of land, under the latter section also.
If it were a proceeding by the party beneficially interested,
addressed to the equitable powers of the court asking its aid
to stay and prevent the commission of further acts of waste
or injuries permanently affecting the freehold, it might then
be granted by virtue of the general authority of a court of
equity, or under the provisions of the last named section.
But since we cannot agree with the counsel in saying that
the complaint shows that the legal title is in the plaintiff, it
becomes important in forming an opinion upon the correct-
ness of the order of the circuit court dissolving the tempo-
rary injunction, to consider and determine the kind of action
which he has brought.   For in this view of the case, the
equitable proceeding is the only one open to him.   The ac-
tions of waste and ejectment, being legal remedies, must be
brought by the person legally interested in the property, and
cannot be maintained by a *cestui que trust*, or other party hav-
ing only an equitable interest.   1 Chitty's Pl., 2, 60, 189 and
190.   If therefore the action belongs to either of these classes,
we take it to be clear that the appellant is not entitled to
this temporary relief, as it cannot be supposed that the leg-
islature intended that such temporary injunctions should be
issued in cases where it is evident from the plaintiff's own
statements that he cannot maintain the action, and that no
final judgment in his favor can be had.   What then is the
action which the pleader has attempted to set forth in his
complaint ?   Is it the equitable proceeding ?   Or is it an ac-
tion to obtain damages for wrongs and injuries already com-
mitted ?   Or does he seek to recover the land itself ?   Upon
his hypothesis, that the appellant is the owner in fee, the
facts stated are sufficient to enable him to maintain either of
these three forms of action ; but according to our under-
standing, that he is merely a *cestui que trust*, he can only

maintain the first. Under our present system, in which the distinction between actions at law and suits in equity, and the forms of all such actions and suits as they heretofore existed, are abolished, the test by which we are to determine the character of actions, in those cases where the facts stated indicate either of two or more actions, must be the relief demanded. Mr. Whittaker, in his Treatise upon Practice and Pleading under the Code, vol. 1, § 124, lays it down as a general rule, that the nature of the action is to be determined by the prayer for relief. We may, at least, safely adopt this rule in cases of doubt, and in cases like the present, where the pleader, conceiving himself entitled to prosecute either of several actions, has so stated his facts as to leave it uncertain which he intended to pursue. Looking to the prayer for relief, we find very clearly that it is not the proceeding in equity. There is nothing in it which at all indicates that he seeks an injunction as a permanent measure of relief. On the contrary, it is very plain that he seeks it merely for the purpose of restraining the commission of further acts of waste during the pendency of the suit, and as a mode of redress which is incidental and subservient to the main object of the action. No judgment that the defendants may be finally and perpetually enjoined is asked; but the prayer is, that they may be restrained until the further order of the court. The complaint then proceeds to demand a recovery from the defendants of the land in controversy, and of the damages which the plaintiff alleges he has sustained by reason of the several acts of waste complained of, besides the costs of his suit. The concluding portion of the prayer makes it certain that the action is brought either for the land or the damages, and although they may not both be joined in one action, it is yet unnecessary for us to decide for which, since neither can be maintained by a person not having the legal title.

In support of our opinion that the appellant has not the legal title to the land, we may say, that the complaint shows that it was acquired by Philo Gillett, administrator *de bonis non* of the estate of Benoni R. Gillett deceased, and that no conveyance by him to the plaintiff or any other person, has

ever been made. It is expressly averred that the legal title was in Philo Gillett, "but in trust, nevertheless, for the heirs of Benoni R. Gillett." The only claim of title in the plaintiff is founded upon the facts, that the land was purchased with funds belonging to the estate of the deceased, of whom the plaintiff and Philo Gillett, the administrator, together with nine other persons named, were joint heirs; that after the conveyance to Philo Gillett, the plaintiff purchased and had conveyed to him, by deeds duly executed and delivered by each, the shares of six of the other heirs; that after such purchase he presented his petition to the county court of La Fayette county, praying that seven-elevenths of the estate might be assigned to him; that upon such petition such proceedings were, among other things, had in due form of law, that he was declared, ordered and adjudged to be the owner of seven-elevenths of the estate, including the land in question; and that he afterwards purchased and had conveyed to him the share of Leonard F. Gillett, one of the heirs of the said deceased. It is likewise stated that Benoni R. Gillett, in his lifetime and at the time of his death, was in possession of the land in question, claiming the same as mineral lands, the title thereto being in the United States; but as that statement can in no wise affect the question of legal title, it need not be noticed. Upon these statements it may well be admitted that the appellant is the equitable owner of the undivided eight-elevenths for which, or the damages to which, this action is brought; but it certainly cannot be contended that they show him to have any legal interest whatever. The debts and charges being paid, and the affairs of the estate otherwise closed, as must be presumed from the fact of a decree of distribution having been made, there can be no doubt of the existence of the trust, and that a transfer may be enforced by the parties beneficially interested. Sec. 9, chapter 57, R. S. 1849. But until the trust is executed, and the legal title transferred to the heirs or others entitled to their interests, the trustee remains, at law, the owner.

Nor can the decree of the county court be said to have at all affected the matter. It at most only ascertained and declared the shares or parts of the estate to which the several

January Term, 1861.

heirs or their representatives or assigns were entitled, so as to enable them to demand or recover them from the administrator or other person having the same. Sec. 3, chapter 72, R. S. 1849. It did not purport to affect or transfer the legal title to any estate or lands, but to settle and determine the rights and interests of those persons to whom the lands of which the intestate died seized, descended upon his death, and in whom the legal title then was. This was the extent of the authority conferred upon the county court, and the utmost effect which can be given to such decree with regard to the lands in question, is that, as between the plaintiff and the other heirs and the trustee, it may be conclusive of the extent of their respective equitable rights and interests.

It is needless for us to enter into any discussion as to how the title would have been affected by a decree of partition by the county court under the statute referred to (sec. 18, chapter 72, R. S. 1849), the administrator and trustee being one of the heirs and a party to the proceeding; since it is not alleged that any such partition was ever adjudged. A reference to some authorities bearing upon that question will be found in the case of *Nash vs. Church*, 10 Wis., 303.

The order of the circuit court is affirmed.