PEPPER and others vs. O'DOWD.

STATUTE OF LIMITATIONS: ADVERSE POSSESSION. *Limits of constructive adverse possession defined.*

1. Secs. 6 and 7, ch. 138, R. S., relating to adverse possession under paper title, must be considered together as one entire provision; the former giving the general rule, and the latter defining certain particular conditions of such adverse possession.

2. Under these sections, actual adverse possession of part of a single lot or of a known farm does not operate as constructive adverse possession beyond the limits of such lot or farm, even where it is part of a more extensive tract included in the instrument or judgment under which the occupant entered.

3. Subds. 3 and 4 of sec. 7 are independent of each other, and under the former, actual possession of part of an uninclosed lot by its use for fuel or fencing for the ordinary use of the occupant, will probably, under proper circumstances, operate as constructive adverse possession of the whole lot; but, under the limitation of sec. 6, it can in no case so operate beyond the limits of the same lot.

4. Being independent, both subdivisions cannot support the same possession of the same premises; and an ambiguous possession claimed in part under each, and not supported by either alone, is not within the statute.

5. In subd. 4, the word "included" must be construed in the sense of "inclosed."

[6. As applied to a single lot, subd. 4 may operate to limit the effect of subds. 1 and 2, by requiring the improvement or inclosure to be "according to the usual course and custom of the adjoining country;" subd. 4 making actual possession by improvement or inclosure of a part, constructive possession of the whole, only where the unimproved or uninclosed part is left so according to such course and custom.]

7. The "single lot" of the statute is the smallest legal subdivision of land; and its extent is certain of itself, without recourse to any course or custom.

8. The "farm" of the statute is land held for cultivation and cultivated in whole or in part, of whatever size, shape or boundaries, and whether comprising several lots or parts of lots, or less than one lot.

9. It being the purpose of the section to confine constructive adverse possession to such visible and notorious possession as may fairly imply notice and acquiescence, the extent of the "farm" of subd. 4 must be "*known*" in the sense of being *notorious*.

10. To constitute adverse possession, entry must be made with defined claim of title and of possession; and after entry, such claim cannot be enlarged, except by acts equivalent to a new entry and new claim of adverse possession.

11. Entry upon part of a lot under claim of title to the whole, while the other part is held adversely, cannot found adverse possession of the whole lot, though afterward the adverse possession of the other part be abandoned.

12. To establish adverse possession of a known farm, outside of the actual possession taken, the known extent of the farm *at the time of entry* must be established, and adverse possession founded on such entry is limited to that extent.

13. Constructive adverse possession of uninclosed land under subd. 4 can be established only by actual proof of a course or custom in the adjoining country, sanctioning the manner of occupation.

14. To make the actual adverse possession of part of a tract of farming land once possessed and used as several farms, by several owners, constructive adverse possession of the whole tract as one farm, it must be shown, not merely that the whole tract is included in some of the claimant's title papers, but that the several farms had been joined together in one known farm *before* the entry under which he claims, and constituted one known farm at the time of such entry.

15. The actual use of one lot for fuel or fencing under subd. 3, sec. 7, cannot carry with it constructive use of the same piece of timber on another lot. To come within that subdivision, it seems that the land must be held in good faith for the supply of fuel or fencing for the purposes there named, *as its sole or principal object;* the *extent* of the land so used must bear a reasonable proportion to the use; and such use must be distinct, visible, continued and notorious, under claim of title, and not mere casual trespass or occasional use; and what is a *reasonable quantity* in each case is a question *for the jury*, under proper limitation and instruction.

APPEAL from the Circuit Court for *Iowa* County.

Ejectment, commenced in 1872, for one hundred and sixty acres of land in Iowa county. The answer alleged adverse possession under color of title for more than ten years, by defendant and those under whom he claimed, and pleaded the statute of limitations. * On the trial, defendant introduced a

---

* Secs. 6 and 7, ch. 138, R. S., are as follows: "Sec. 6. Whenever it shall appear that the occupant, or those under whom he claims, entered into the possession of any premises under claim of title, exclusive of any other right, founding such claim upon some written instrument, as being a conveyance of

number of deeds through which he traced his claim of title; but none of these appeared to connect him with the original government title shown by plaintiffs to have passed by patent to their ancestor, Harvey Pepper; and no acts of possession of the premises were shown except those of defendant himself and his immediate grantor.

The deed to defendant's grantor, made in 1846, purported to convey 680 acres, including the land here in dispute, with neighboring lands. The tract comprised what had been previously known as two separate farms, viz: the Pepper farm, here in dispute, and the Miller farm.

Defendant's grantor moved his family into a house upon the Miller place, cultivated part of it, and paid taxes upon the whole tract; but none of the Pepper farm was inclosed by him or cultivated. The only use apparently made of this part of the 680 acres, was for cutting timber, which he did indiscriminately upon all parts of the premises in dispute, as well as upon other woodland owned by him (of which he had a large quantity), as he needed timber for fuel or fencing and also for purposes of sale.

the premises in question, or upon the judgment of some competent court, and that there has been a continual occupation and possession of the premises included in such instrument or judgment, or of some part of such premises, under such claim for ten years, the premises so included shall be deemed to have been held adversely; except that when the premises so included consist of a tract divided into lots, the possession of one lot shall not be deemed the possession of any other lot of the same tract.

"Sec. 7. For the purpose of constituting an adverse possession by any person claiming a title founded upon some written instrument or some judgment, land shall be deemed to have been possessed and occupied in the following cases: 1. Where it has been usually cultivated or improved. 2. Where it has been protected by a substantial inclosure. 3. Where, although not inclosed, it has been used for the supply of fuel, or of fencing timber, for the purpose of husbandry or the ordinary use of the occupant. 4. Where a known farm or a single lot has been partly improved, the portion of such farm or lot that may have been left not cleared or not included according to the usual course and custom of the adjoining country, shall be deemed to have been occupied for the same length of time as the part improved or cultivated."

Defendant, after his purchase in 1861, continued to haul wood to market from said land, paid the taxes, and occasionally cut hay thereon, but did not actually inclose or improve any part of it until within about five years previous to the commencement of the action.　The plaintiffs asked the court to give the following among other instructions: 1. That " the use by the defendant or his grantor of the land in question, or a part of it, in common with several other tracts lying in several different sections, comprising in all eight hundred acres of timbered land in a body, for the supply of fuel or fencing timber, would not be within the intendment of the statute of limitations in relation to adverse possession of land by its use for the supply of fuel or fencing timber, unless the jury shall find from the evidence that the quantity claimed was reasonably necessary to supply his actual farm with fuel and fencing timber."　2. That possession of one lot or congressional subdivision of land would not be possession of any other, unless the jury should find that the defendant had established by clear and positive proof that the whole tract claimed by his grantor constituted, according to the custom of the country, a known farm or single lot.　3. That " under the pleadings and proofs, subd. 4 of sec. 7 of the statute of limitations does not apply to this case; " because " this large tract of forest cannot be considered a known farm or single lot."　4. That " this land being divided into forty-acre lots, the facts establishing continued adverse possession must be proved as to each lot." The court refused to give the three instructions first recited, and gave the fourth, modified by adding the following: " This is correct when the unoccupied lot does not constitute part of a known farm."

The court then instructed the jury, in effect, that if the tracts cultivated, together with the lands in question, with or without the other lands mentioned in the deed to defendant's grantor, constituted what might be called a known or recognized farm, then the adverse possession was sufficient, even if

the defendant or his grantor had never taken timber from the Pepper land, so called, for the purpose of fencing or fuel; that a tract of new land covered with forests, if intended to be cultivated by one man as owner, is called a farm; that land, though not a part of a known farm, and not inclosed, may be held adversely so as to set the statute of limitations running, where it is used for the supply of fuel or fencing timber, for the purpose of husbandry or the ordinary use of the occupant; and that the quantity of timber which a farmer ought to be allowed for the present and prospective use and improvement of his farm, could not at present be established by any settled custom; but when there was no fraud, or insincerity or palpable absurdity in the claim, every farmer should be allowed to judge for himself how much of his land he would devote to timber, and how much to the plow.

Verdict and judgment for the defendant; and the plaintiffs appealed.

*A. R. Bushnell*, for appellants, as to the construction to be given the statute of limitations, and the sufficiency of the acts shown to constitute an adverse possession, cited *Sydnor v. Palmer*, 29 Wis., 251; *Wilson v. Henry*, 35 id., 245; *State v. Supervisors of Sheboygan Co.*, 29 id., 79; Smith's L. C., 637; Tyler on Eject., 900; *Simpson v. Downing*, 23 Wend., 320; *Munro v. Merchant*, 28 N. Y., 44; *Dupont v. Davis*, 35 Wis., 643; Bouvier's Law Dic., "Farm;" 2 Binn., 238; 18 Pick., 553; 6 Met., 529; 2 Hilliard on R. P., 338 et seq.

*J. M. Smith*, for respondent, to the point that defendant's entry and the extent of his claim and possession must be referred to his deed and measured by it, cited *Stevens v. Brooks*, 24 Wis., 326; *Sydnor v. Palmer*, 29 id., 226; Tyler on Eject., 495–6, 897, 904; 10 Pet., 412; 1 Chip., 92; 8 Cranch, 229; 4 Mason, 330; Paine's C. C., 457; 3 Wash. C. C., 475; 3 Ired., 578; 2 Tay., 131; 1 Strob., 143; 1 Scam., 181, 186; 23 Cal., 431; 37 Miss., 155; 33 Barb., 386; and he argued that where a "known farm" is partly uninclosed, the only safe rule for de-

termining the extent of the occupant's adverse possession is, to be governed by the boundaries in his deed.

RYAN, C. J.    This case involves the construction of secs. 6 and 7, ch. 138, R. S., and especially subdivisions 3 and 4 of sec. 7.

These sections were copied from the New York revision of 1829, part 3, ch. 4, secs. 9 and 10, with some verbal differences of no significance here, except the substitution of ten years in sec. 6 for twenty in the New York statute. Here, as well as in New York, these sections clearly limit and define the entire rule of constructive adverse possession. All constructive adverse possession under the statute must come within some of the conditions which the statute gives. And, in giving construction to these, any nice consideration of the rules of decision outside of the statute would, we think, be quite unavailing. The questions before us are new here, and seem to have been the subject of but little authoritative discussion in New York. *Simpson v. Downing*, 23 Wend., 316; *People v. Livingston*, 8 Barb., 263; *Munro v. Merchant*, 26 id., 383; 28 N. Y., 9; *Dominy v. Miller*, 33 Barb., 386.

The two sections must be considered together as one entire provision; for they are not only *in pari materia*, but are clearly dependent on each other. Sec. 6 gives the general rule of adverse possession under paper title; and sec. 7 defines certain particular conditions of such adverse possession. *Sydnor v. Palmer*, 29 Wis., 253. We cannot regard sec. 6 and subds. 1, 2 and 3 of sec. 7, as giving different rules, as the New York court of appeals seems to have thought. *Munro v. Merchant, supra.*

Sec. 8 limits adverse possession, under claim other than upon paper title, to actual possession only. Sec. 6 enacts what was generally recognized as the law before the statute, that when one enters into and holds continual possession, under a paper title, of part of the premises included in it, he

shall be deemed to hold adversely all the premises included in it; that is, when one enters under color of title, he is presumed to enter claiming according to the extent of his title (*Sydnor v. Palmer*, 29 Wis., 226), and where there is no adverse possession, the law will construe his entry to be coextensive with his title (*Ellicott v. Pearl*, 10 Pet., 412); " except that when the premises so included consist of a tract divided into lots, the possession of one lot shall not be deemed the possession of any other lot of the same tract." This exception materially restricts the rule of constructive adverse possession, as held before the statute; and unquestionably enters into every condition of adverse possession under these sections, save only in the instance of a *known farm*, substituted by subd. 4 of sec. 7 for *a single lot*. And so, under these sections, actual adverse possession of part of a single lot or a known farm shall not operate as constructive adverse possession beyond the limits of such lot or farm.

The object of the exception is sufficiently intelligible.  Before the statute, adverse possession, to bar the true title, should be visible and notorious.    Hare and Wallace's notes, 2 Smith's Lead. Cas., 561; *Hawk v. Senseman*, 6 S. & R., 21.    Being visible and notorious, the true owner was presumed to have notice of it and to acquiesce in it.    But although the actual possession of some of the premises claimed might be so visible and notorious as fairly to imply notice and acquiescence, there was danger in extending such possession by construction to all of the premises claimed; for this could not always be visible and notorious, so as to raise a fair presumption of notice and acquiescence.    The paper title might be relatively extensive, and the actual possession relatively limited.    And it might often be unsafe to hold actual adverse possession of one or some of several parcels, under one title, as constructive adverse possession of all the parcels; so as to bar the right of the true owner, however insignificant the actual possession might comparatively be.    The difficulty lay in connecting the

actual possession with the extent of the paper title. And the presumption that actual possession of some of the premises claimed under one title, should operate as visible and notorious adverse possession of the whole, really implied another presumption, perhaps seldom true in fact, that the extent of the paper title was as visible and notorious as the actual possession. Where the paper title covered several distinct lots, possession of one lot under it could not always be, perhaps seldom was, fair notice of possession claimed in the others. But as possession of part of a single lot may well imply a visible and notorious claim of title and possession to the whole of it, the danger of injustice from the doctrine of constructive adverse possession is greatly lessened, if not wholly removed, by confining it to the single lot within which the actual possession is taken and maintained. This is our understanding of the intent of the sections under consideration. See revisers' notes, 5 Edmunds' Stats., 430; *Simpson v. Downing; Munro v. Merchant.*

Sec. 6 having determined the general rule, that actual possession of one lot shall not be deemed constructive possession of any other lot, sec. 7 proceeds to define some conditions of adverse possession under sec. 6. And these are distributed into four instances:

1. Cultivation or improvement.

2. Protection by a substantial inclosure. Whether and in what circumstances, under these two subdivisions, cultivation or improvement in the one case, or inclosure in the other, of part of a single lot could be held constructive adverse possession of the whole lot, except under the conditions of subd. 4, are questions not before us in this case.

3. Use of uninclosed land for fuel or fencing, for the ordinary use of the occupant. *Du Pont v. Davis*, 35 Wis., 631. This subdivision, as reported by the New York revisers, was limited by the words, " for the purposes of a farm of which it forms a part." The legislature there rejected those words,

and substituted the limitation found in the section as adopted by the legislature here, "for the purpose of husbandry or the ordinary use of the occupant." The language adopted and the language rejected alike indicate that this subdivision is independent of subd. 4. 26 Barb., 383.

These three instances are obviously held by the statute as equivalent to actual possession, independent of any other possession. If such actual possession be of less than a whole lot, it may, in proper circumstances, probably under subd. 3 and possibly under subds. 1 and 2, operate as constructive adverse possession of the whole lot. But such actual possession certainly can, under the limitation of sec. 6, be carried, in no case, as constructive adverse possession, beyond the limits of the same lot.

These three subdivisions have defined actual adverse possession, leaving constructive possession arising from it to the general rule of sec. 6. But the fourth subdivision appears to give a rule of actual and constructive adverse possession for itself.

4. " Where a known farm or a single lot has been partly improved, the portion of such farm or lot that may have been left not cleared or not included according to the usual course and custom of the adjoining country, shall be deemed to have been occupied for the same length of time as the part improved or cultivated."

The word *included* is found in this subdivision, apparently by inadvertence, instead of the word *inclosed* in the New York statute; and must be construed in the same sense, as it cannot well bear any other here, and will bear that.

As applied to a single lot, this subdivision may operate to limit the effect of subds. 1 and 2, by making them dependent on the usual course and custom of the adjoining country. For subds. 1 and 2, of themselves, limited only by the general rule of sec. 6, would make cultivation or improvement in the one case, inclosure in the other case, of part of a lot, actual

possession of such part and constructive possession of the whole, independent of any course or custom; while subd. 4 gives that effect to such actual possession only when the unimproved or uninclosed part is left so according to the usual course and custom of the adjoining country.

There is no difficulty in determining what a *single lot* of the statute is. It is the smallest legal subdivision of land. *Munro v. Merchant, supra.* Its extent is certain of itself without recourse to any course or custom. And in regard to it, the provisions of sec. 6 and subds. 1 and 2 of sec. 7 seem to have been complete without subd. 4. The latter subdivision, so far as it relates to a single lot, appears only to confuse the statute, otherwise precise and certain. It is apparent that the principal object in framing that subdivision was a *known farm;* and it is to be regretted that the subdivision was not confined exclusively to it.

The farm of the statute is not land intended to be cultivated, but a body of land held for cultivation and cultivated in whole or in part. Burrill's Dict. A farm may be of any size, of any shape, of any boundaries; may include less than one lot, or comprise several lots or parts of lots. And in taking a farm out of the general exception in § 6, and in applying to it in some degree the same rule as to a single lot, the statute substitutes *known* limits according to the course and custom of the country, for the defined limits of a single lot.

As already seen, the purpose of the section is to confine constructive adverse possession to such visible and notorious possession as may fairly imply notice and acquiescence; in other words, to render the extent of constructive adverse possession as certain as its nature will permit. Hence the limitation to the defined boundaries of a single lot. Hence, also, the condition of a farm substituted for a single lot, that it shall be *known.* As the possession is limited to one lot, so it is to one farm, with *known* boundaries to compensate the *defined* boundaries of a lot. And as it is the object of the

statute to render adverse possession notorious, so the extent of a farm substituted for a single lot, must be *known*, in the sense of being notorious.

Being so known, when part of it is left uncleared or uninclosed, according to the usual course and custom of the adjoining country, adverse possession of the part actually occupied may extend, by construction, to the part left uncleared or uninclosed according to such course and custom. The course or custom intended is presumed to make the uncleared or uninclosed land a known part of the farm; and the course or custom which operates to extend a notorious adverse possession, must itself be notorious. And thus the limited rule of constructive adverse possession which the statute continues, can never carry it beyond the defined limits of the whole lot or the known limits of the whole farm, of which part is held in actual possession; making constructive possession, as far as may be, as visible, notorious and distinct as the actual possession on which it rests.

All adverse possession must be distinct and continued; notoriously and visibly so. Hare & Wallace, *ubi supra*. And it cannot be enlarged, either as to title or extent, after entry. To constitute adverse possession, entry must be made with defined claim of title and of possession, continued while the statute runs; and, after entry, such claim cannot be enlarged, unless indeed by acts equivalent to a new entry and new claim of adverse possession. Angell's Lim., sec. 384. Entry upon part of a lot, under claim of title to the whole, while other part is held adversely, cannot found adverse possession of the whole lot, though afterwards the adverse possession of the other part be abandoned. And so possession of a known farm cannot be enlarged after entry, to constitute adverse possession founded on such entry by enlarging the boundaries of the farm. Within the statute, the known extent of the farm at the time of entry limits adverse possession under the entry, as surely as the defined extent of a single lot. And, in order

to establish adverse possession of a known farm, outside of the actual possession taken, the known extent of the farm at the time of entry must be established. When established, adverse possession founded on the entry can, under no claim or pretense, be suffered to travel beyond that extent. It is the intent of the statute to make the bounds of a known farm as certain, as far as may be, as the bounds of a single lot; and so to make adverse possession of the one as distinct, visible and notorious, as far as possible, as adverse possession of the other.

"The usual course and custom of the adjoining country" is obviously a local custom. If there were, in fact, such a custom applicable to this case, it might and should have been proved by parol. 2 Greenl. Ev., § 250. No proof was given on the subject; but it was, perhaps, hardly competent for the court below to assume that there was no settled custom on the subject. If the assumption were correct, it seems that subd. 4 of sec. 7 should have been excluded from the consideration of the jury, because that subdivision is dependent on such a custom. And it was certainly error to instruct the jury that, in the absence of any settled custom, every farmer should be allowed to judge for himself; that is to say, every farmer should be a custom unto himself.

It appeared in evidence that what are called the Pepper farm and the Miller farm had been, not remotely, possessed and used in severalty, as several farms, by several owners. Both are embraced in some of the respondent's title papers. But that goes no more to make them one farm than to make them one lot. To reduce the two into one known farm, within subd. 4, so as to make the actual adverse possession of the respondent or his grantor of part, constructive adverse possession of the whole, it should have been proved that the two had been joined together in one known farm before the entry on which the respondent claimed, and constituted one known farm at the time of such entry. We understand the charge of the court below, and we think the jury must have understood

it, to hold that if the Pepper and Miller farms, after entry, with or without intervening land held by the respondent's grantor under a different title, constituted one known farm, then constructive adverse possession of the whole followed the entry of the respondent's grantor. We need not repeat the reasons why we consider this to be fatal error. And we may be permitted to remark that there is, throughout the charge, an obvious conflict between the certain rule of adverse possession which the statute sanctions, and the loose and indefinite application of the rule sanctioned by the court below; and much that looks very like a reversal of the rule that, under the statute, every presumption is in favor of the true owner. *Wilson v. Henry*, 35 Wis., 241.

How much uninclosed land may be so used for fuel or fencing or both, under subd. 3, as to constitute an actual adverse possession of it, may be a question of some difficulty. Certainly such actual use on one lot cannot carry with it constructive use on another lot, of the same piece of timber. The use is put by the statute as actual possession, subject to the general exception of sec. 6. Land, to come within the subdivision, must be used for the supply of fuel or fencing according to the subdivision, and we are inclined to think, must be held for that use as its sole or principal object, in good faith. The extent of land so used must bear a reasonable proportion to the use; must not be positively greater than is reasonably sufficient for fuel and fencing, in the circumstances of each case. And the use must be distinct, visible, continued and notorious, under claim of title; distinguishable from casual trespass or occasional use. *Austin v. Holt*, 32 Wis., 478. It must be such as to constitute the person using the land for fuel or fencing, the occupant of it, in the words of the subdivision. This question also seems to have been referred, by the court below, very much to the judgment of the occupant, in the absence of fraud or insincerity. We cannot but say that the quantity, several hundred acres, appearing to be

claimed here for this use, looks to us unreasonably out of proportion to the supply of fuel and fencing, in the circumstances proved. "So large a tract of forest would not be within the intendment of this provision." *Munro v. Merchant.* What is a reasonable quantity, in each case, is not altogether for the party as matter of choice, nor altogether for the court as matter of law; but is a question for the jury, under proper limitation and instruction.

We ought not to close this discussion without the remark, that subds. 3 and 4 of sec. 7 are quite independent of each other; and that both cannot support the same possession of the same premises. We do not say that one may not, under any circumstances, hold possession of a farm under subd. 4, and of a separate lot for fuel and fencing under subd. 3. On that point we intimate no opinion. But as there is no confusion in the statute between the two forms of possession, so there can be no confusion of possession in fact under them. And where possession is claimed as of a farm, the claim can receive no aid from subd. 3; where it is claimed as used for the supply of fuel or fencing, the claim can receive no aid from subd. 4. An ambiguous possession, claimed in part under each subdivision and not supported by either alone, is not within the statute, and will go for nothing.

Other matters were discussed at the bar, which we do not deem it necessary to consider. It is apparent from all that has been said, that the judgment of the court below must be reversed, and the cause remanded for a new trial.

*By the Court.* — So ordered.