Tompkins *v.* Snow.

[FOURTH DEPARTMENT, GENERAL TERM, at Rochester, September 10, 1872. *Johnson, Talcott* and *Barker*, Justices.]

———— •◆• ————

63   525
127a 396
63b 525
9ap 25

## TOMPKINS *vs.* SNOW.

One who enters into possession of premises as the tenant of another, under a lease rendering rent, cannot, while that possession continues, dispute the title of his landlord.

And if, during such possession, the tenant takes a contract for the purchase of the land—which is equally an acknowledgment of the title of his landlord—and being unable to perform, surrenders it, and agrees to resume his footing as a tenant, no adverse possession can commence while that possession continues, as against the landlord, or his heirs.

This rule of law applies not only to the tenant himself, but to everyone who succeeds to his possession by his permission and consent.

The lessor or vendor of land would lose the protection of this rule of property if the tenant or vendee could make a fraudulent title to a third person, let him into possession, and then such third person should be permitted to claim adversely under the fraudulent title thus created by the tenant in possession, and who could not himself be permitted to set up even a valid title, without first restoring the possession. *Per* TALCOTT, J.

The possession of an assignee of the tenant cannot be adverse; and such possession cannot, by any mere lapse of time, ripen into a title, as against the landlord, or those claiming under him.

The administrators of a deceased landlord, cannot, by any act or omission of theirs, whether done innocently or otherwise, affect the title of one claiming under their intestate. And their unauthorized receipt of money upon a contract of their intestate, never valid and long since abandoned, will not change the position of the assignee of a tenant with regard to the true owner, or turn his possession as tenant into an adverse possession.

APPEAL from a judgment for the defendant, entered on the report of a referee.

*Lansing & Sherman*, for the appellant.

I. To constitute adverse title, the party must be in possession, claiming title hostile to the real owner. (*Code*, § 82.) In *Brandt* v. *Ogden*, (1 *John.* 156, 158,) Spencer, J., says: "In order to bar the recovery of a plaintiff who has title, by a possession in the defendant, strict proof has always been required, not only that the first possession was taken under a claim hostile to the real owner, but that such hostility has existed on the part of succeeding tenants." In *Humbert* v. *Trinity Church*, (24 *Wend.* 587,) Cowen, J., at page 597, says: "A naked possession of land, unaccompanied by a claim of right, never constitutes a bar, but enures to the benefit of the owners. A possession, to be adverse, must be inconsistent with the title of the complainant who is out of possession; it must be accompanied with a claim of title, exclusive of the right of all others; and must be definite, notorious, and continued for the period of twenty years." In this case, the defendant or his lessor never claimed title; on the contrary, always claimed he was in under a contract of purchase, and was in pursuit of a title, which he on all occasions conceded he did not have, but was endeavoring to obtain.

II. A purchaser cannot dispute the title of his vendor; and while in possession under a contract of sale, such possession is the possession of the vendor, and as purchaser he cannot question the vendor's title. (*Jackson* v. *Smith*, 7 *Cowen*, 717; *Sutherland, J.*, 720. *Jackson* v. *Walker, Id.* 637; *Woodworth, J.*, 642, 643. *Jackson* v. *Spear*, 7 *Wend.* 401; *Nelson, J.*, 404. *Ingraham* v. *Baldwin*, 9 *N. Y.* 45; *Gardiner, J.*, 47. 2 *Phil. Ev.* 276, 2d ed. *Cowen & Hill's Notes*, 201, *and cases cited.*)

III. The plaintiff was in possession of these premises

under a contract for the purchase thereof from George M. Hopkinson, the defendant's lessor, when he received the conveyance of the same from Hiram W. Kilborn, September 27, 1865. He could not interpose such conveyance as a defence in the action of ejectment brought against him by Hopkinson. He must first surrender the premises and bring his action. This he has done. (*Jackson* v. *Spears,* 7 *Wend.* 401.) This principle disposes of the judgment as a defence in this action.

IV. The defendant, or his lessor, cannot claim to hold these premises, upon the principle that a purchaser may do so after performance, and an equitable title to a deed has been acquired. When the conveyance of these premises was made by the heirs of Allen Kilborn to Hiram W. Kilborn, Samuel H. Stearns was in the possession, as the tenant of Allen Kilborn. The contract under which the defendant claims was never executed by Allen Kilborn, or by his authority. He totally repudiated it, when first brought to his knowledge. It was cancelled and surrendered up by both parties; and it was never subsequently recognized by the heirs of Allen Kilborn, or by Hiram W., as having any legal or equitable existence. Immediately thereafter, in April, 1841, a new contract was made. On the 3d of July, 1841, this new contract was cancelled, and the premises leased by Allen Kilborn to Stearns, under which he occupied when Hiram W. became the owner in April, 1842, and when Hopkinson went into possession in September, 1842. The assignment of the Sherwood contract to Hopkinson, gave no force or effect to it. The administrators, by receiving payment upon it, could not give life or validity to a contract which their intestate had never executed or authorized, but had expressly repudiated. At the time of such payment Hiram W. was the owner of the premises; he had never consented to or sanctioned such payment. At the time of the alleged transfer to Hopkinson by Stearns, and at the time of the alleged payment to

the administrators, this contract had become forfeit. The payment due April 1, 1842, had not been made. This alone was sufficient to put him upon inquiry. Hence every element necessary to constitute the purchaser a holder adversely, is wanting in this case. 1. There is no contract for the purchase. 2. There is no performance of any such contract. 3. There is no equitable title to a deed of the premises acquired. No adverse possession in this case can be based upon any paid up contract, entitling the party in equity to a conveyance.

V. There is a wide difference in principle in claiming under a defective deed and under a defective contract. 1. Under a deed or any writing purporting to transmit or vest the title—such title is absolutely claimed—and such claim is the very gist of an adverse possession. Such claim without a paper title may constitute an adverse possession. 2. Under a contract the purchaser does not claim the title. He expects, on performance of his contract, to receive, sometime in the future, a title to the premises; and it must be such a contract that upon the performance of it the purchaser can, in equity, compel a conveyance to him by the vendor or his representatives. (*La Frombois* v. *Jackson,* 8 *Cowen,* 589. *Briggs* v. *Prosser,* 14 *Wend.* 228.) And in no case has it been held that a contract performed, and upon which a conveyance cannot be enforced, constitutes the basis of an adverse title.

VI. The referee in this case finds that there was no valid contract of sale. That there is no contract executed by Allen Kilborn, or by his authority, or ratified by him, or those claiming through him. That there is no performance, as payment to the administrators, under those circumstances, is wholly unauthorized. Yet, upon a contract made by an assumed agent, which was repudiated and surrendered up by both parties, and the agent's authority denied, the referee holds an adverse title can be based.

Tompkins *v.* Snow.

*M. A. Hackley*, for the respondent.

I. The plaintiff is not entitled to recover the premises in question, if such premises have been held and possessed adversely to the plaintiff's title, by the defendant's lessor for twenty years before the commencement of this action. (*N. Y. Code*, §§ 78–81.) 1. George M. Hopkinson was the defendant's lessor. He was in the actual continued occupation of the premises in question, and in the uninterrupted possession thereof from the 30th day of March, 1843. to the 14th day of December, 1867, a period of twenty-four years and eight months. 2. He paid for said premises in full, and in good faith, on or before the 30th of March, 1843. 3. He in good faith claimed to be the owner of said premises from that date. He believed his contract a valid one, and claimed that he was entitled to a deed. He claimed in hostility to the title of the plaintiff, and exclusion of any other right.

II. Possession under a paid up contract is a good basis for an adverse possession. (*Briggs* v. *Prosser*, 14 *Wend.* 228. *Jackson* v. *Foster*, 12 *John.* 488. *Fosgate* v. *Herkimer Manuf. &c. Co.*, 12 *Barb.* 352. *La Frombois* v. *Jackson*, 8 *Cowen*, 589. *Clapp* v. *Bromagham*, 9 *id.* 530.)

III. It is not necessary that the instrument claimed under should be a valid one. The fact of possession and its character are the test. (*La Frombois* v. *Jackson*, 8 *Cowen*, 589. *Munro* v. *Merchant*, 28 *N. Y.* 9–41. *Bradstreet* v. *Clarke*, 12 *Wend.* 602. *Humbert* v. *Trinity Church*, 24 *id.* 587.)

IV. Possession of a lot under claim of ownership is a good adverse possession. (*Crary* v. *Goodman*, 22 *N. Y.* 171. *Miller* v. *Garlock*, 8 *Barb.* 153. *Humbert* v. *Trinity Church*, 24 *Wend.* 587.)

V. The defendant's lessor having possessed the premises in question adversely to the plaintiff and his grantees, for more than twenty years, is the true owner of said premises. (*Traphagen* v. *Traphagen*, 40 *Barb.* 537. 24 *Wend.* 587. 4 *Duer*, 452. 8 *Cowen*, 589.)

*By the Court,* TALCOTT, J. This is an action of eject-
ment, to recover the possession of a lot in Ellis village, in
the county of Jefferson.

According to the findings of the referee, Allen Kilborn
was the owner of the premises in fee, on and prior to April
1, 1841. On that day one Sherwood, assuming to act as
the agent of Allen Kilborn, entered into a written agree-
ment for the sale of the premises to Samuel H. Stearns.
Stearns being then in the possession of the premises under
a lease from Allen Kilborn. The bargain made by Sher-
wood was for a sale of the property for $250, but he re-
ceived a note from Stearns for $50 in payment of part of
the purchase money, and the sum secured by the contract
to be paid was only $200. Sherwood sent the contract
and note to Allen Kilborn. Sherwood had no authority
to enter into the contract as the agent of Kilborn, and the
latter refused to accede to it, but prepared and executed
another contract to sell the same premises to Stearns,
bearing the same date as the Sherwood contract, but pro-
viding for the payment of $250 as the condition on which
a conveyance was to be made. By this latter contract the
sum of $50, part of the purchase money, was to be paid
by Stearns on the 1st day of July, 1841, and Allen Kilborn
caused the Sherwood contract and the $50 note to be re-
turned to Stearns. They were delivered back to him, and
the new contract, executed by Allen Kilborn personally,
was, by agreement of the parties, substituted in place of
the Sherwood contract. On the 2d of July, 1841, Allen
Kilborn assigned the last contract to his son, Hiram W.
Kilborn, and authorized him to settle with Stearns. On
the next day Hiram W. Kilborn applied to Stearns for
the payment of the $50 which became due on the first of
the same month. Stearns could not pay, and thereupon
surrendered the contract and agreed thereafter to occupy
the premises as a tenant. The particular terms of the
tenancy are not found by the referee. The agreement, as

testified to, was that Stearns was to pay Hiram W. Kilborn rent for the premises as long as he (Stearns) occupied them. The lease under which Stearns was occupying when the contract was made, was a lease for a year, at the annual rent of $36.

Allen Kilborn died intestate in August, 1841. In the summer or fall of 1842, the said Samuel Stearns, being still in possession of the premises, undertook to, and did, for a valuable consideration assign to one George M. Hopkinson, the old contract attempted to be made by Sherwood as the agent of Allen Kilborn with Stearns, falsely representing it to be a valid contract, and that he had paid $50 down at the time of taking it; and thereupon he surrendered the possession of the premises to Hopkinson, who purchased the contract for a valuable consideration, believing the same to be a valid and outstanding contract, and went into possession of the premises under that supposition. Hopkinson afterwards paid to the administrators of Allen Kilborn the amount purporting to be secured to be paid as the purchase money of the premises under the Sherwood contract, supposing, as the referee finds, that they had a right to receive the same, and they did receive it. Hiram W. Kilborn was the son, and one of the heirs at law of Allen Kilborn, and in 1841 and 1842, he acquired, by conveyance, the title and interest of his co-heirs to the premises. This was before the payment by Hopkinson to the administrators of Allen Kilborn, of the sum purporting to be due on the Sherwood contract. Hopkinson and those claiming under him, have been in the occupation of the premises since he received the possession with the assignment of the Sherwood contract from Samuel Stearns. And since he made the last payment on the Sherwood contract to the administrators, which was in March, 1843, Hopkinson has claimed to own the same under the Sherwood contract. In 1858 the plaintiff went into possession of the premises, under a verbal contract with Hopkinson

to purchase the same of him. In 1865, and whilst the plaintiff was so in possession under the verbal contract with Hopkinson, he (the plaintiff) took a deed of the premises from Hiram W. Kilborn. Many and various negotiations had taken place between Hopkinson and Kilborn before this time, touching some compromise, or settlement, of the disputed title, each claiming in hostility to the other.

Much evidence was given on the part of the defence, tending to show that Hiram W. Kilborn had, after Hopkinson's purchase of the Sherwood contract from Stearns, recognized the validity thereof, and consented to the payment of the money purporting to be due thereon to the administrators, by way of raising an estoppel against Hiram W. Kilborn.

This was contradicted, and the referee finds that no facts were sufficiently proved to establish such an estoppel. When Hopkinson discovered that the now plaintiff, then in the possession of the premises as his vendee, had taken the conveyance from Hiram W. Kilborn, he commenced an action of ejectment against the present plaintiff. On the trial of that action the now plaintiff was not permitted to set up his title under the deed from Hiram W. Kilborn, upon the ground that he had entered into the possession under the contract with Hopkinson, and could not set up a hostile title existing at the time of his taking possession, until he had first restored the possession. (*Jackson* v. *Spear,* 7 *Wend.* 401.)

The present defendant is the tenant of Hopkinson. The referee has determined, as a conclusion of law, that the possession of Hopkinson, from the time he paid to the administrators the amount purporting to be secured by the Sherwood contract, was hostile and adverse to the title of Hiram W. Kilborn; and therefore that the defendant and those under whom he claims, have held the premises adversely for more than twenty years, and upon this

Tompkins *v.* Snow.

ground, has rendered judgment for the defendant. In this we think the referee has overlooked an important principle of law, namely, the one which was illustrated in the action of Hopkinson against the now plaintiff, and which the referee, in discussing the effect of that judgment, seems to fully recognize and understand. The plaintiff represents, and is vested with the title which Allen Kilborn formerly had, and to which Hiram W. Kilborn succeeded. It would not be seriously pretended that if Stearns were now in possession of the premises he could deny the title which the plaintiff represents. He entered into the possession of the premises as the tenant of Allen Kilborn, under a lease rendering rent, and could not, while that possession was continued, dispute the title of his landlord. During such possession, he took a contract for the purchase of the land, which was equally an acknowledgment of the title of Kilborn. This contract was never performed, but Stearns, being unable to perform it, surrendered it, and agreed to resume his footing as a tenant. Under these circumstances no adverse possession could commence while that possession continued, as against Allen Kilborn or his heirs. So far the referee recognizes the doctrine, but he seems to have overlooked the fact that this rule of law applies not only to the tenant himself, but to everyone who succeeds to his possession by his permission and consent. This doctrine is distinctly recognized in *Jackson* v. *Spear*, (*supra*,) and has been expressly decided in several cases. *Jackson* v. *Walker*, 7 *Cowen*, 637. *Jackson* v. *Harder*, 4 *John.* 202.)

The lessor, or vendor, of land would lose the protection of this rule of property, if the tenant or vendee could make a fraudulent title to a third person, let him into possession and then such third person should be permitted to claim adversely under the fraudulent title thus created by the tenant in possession, and who could not himself be permitted to set up even a valid title, without first restor-

Tompkins *v.* Snow.

ing the possession. The title claimed by Hopkinson was a title fraudulently created by the tenant of Kilborn, and Hopkinson was let into possession by, and succeeded to the possession of, the tenant. "A claim of title which cannot be set up by a person while in possession, cannot be set up by another who comes into possession under him." (*Jackson* v. *Harder, supra.*) As assignee of Samuel Stearns the possession of Hopkinson could not be adverse; and that possession could by no mere lapse of time ripen into a title as against the landlord, or those claiming under him. The administrators could not, of course, by any act or omission of theirs, whether done innocently or otherwise, affect the title of Hiram W. Kilborn, and their unauthorized receipt of the money, on the never valid, and long abandoned, Sherwood contract, did not change the position of Hopkinson with regard to the true owner, or turn his possession as tenant of Kilborn into an adverse possession.

The judgment must be reversed and a new trial ordered, costs to abide the event, and the order of reference vacated.

MULLIN, P. J., having formerly been of counsel in regard to the matters involved, did not sit in the case.

New trial granted.

[FOURTH DEPARTMENT, GENERAL TERM, at Rochester, September 10, 1872, *Johnson* and *Talcott*, Justices.]