JAMES ELLEGE v. JOHN COOKE et al.

LIMITATION OF REAL ACTIONS. Adverse possession. Vendor. Vendee. Title bond. Color of title. The possession of a purchaser of land by title bond who goes into possession and holds for himself, is not the possession of his vendor, who has color of title, so as to perfect the latter's title, under the 1st section of the act of 1819, in seven years, against an otherwise superior title in another. If the purchaser in such case be for some purposes regarded as the tenant at will of his vendor, yet he is not the tenant in fact, and his possession is not tha of his vendor, in the sense of the statute.

FROM SEVIER.

Appeal in error from the Circuit Court of Sevier county. J. G. ROSE, J.

J. P. SWAN for Ellege.

G. W. PICKLE for Cooke.

Ellege *v.* Cooke.

McFARLAND, J., delivered the opinion of the court.

This action of ejectment was submitted to the circuit judge without a jury, and judgment rendered for the defendants. The written opinion of Judge Rose, embodying his finding of the facts and conclusions of law, was made the bill of exceptions, upon which alone the plaintiff appeals in error to this court. The controversy is between adjoining land owners in reference to an interlock covered by both titles. The judge finds in the first place, that, the question of possession being out of the way, the defendants have the older and superior title; second, that the plaintiff has not, either by himself or those under whom he claims, had twenty years' possession of the disputed land; and third, he finds that the plaintiff purchased his tract from one Butler by title bond. Butler had a grant and held possession of the disputed land under it two years and four months. The plaintiff, after he purchased from Butler, went into possession of the disputed land under his title bond and held adversely for as much as seven years, when the enclosures were thrown down and the actual possession lost. After this the plaintiff obtained a deed from Butler, but had no actual possession of the disputed land after the date of his deed. Still later, however, he sold part of the disputed land to one of the defendants, Cooke, by a title bond which was duly registered, and Cooke took possession. Emmet, one of the other defendants, obtained possession of another part of the disputed land, still later, by an action of

ejectment, to which, however, the present plaintiff was not a party. Upon this state of facts the action of ejectment was brought; the other defendants, we presume, were either tenants of Emmet or Cooke. The judgment in favor of Cooke is correct, upon the ground that under our recent statute the plaintiff's title bond to him, duly registered, is a good defense as to the land therein described, which, we take it, embraces all the land claimed by Cooke.

The question remaining is, as to the judgment in favor of Emmet. The defendant's title (aside from the question of possession) being superior, the plaintiff seeks to make out his title, by showing seven years' adverse possession, under the 1st section of the act of 1819, Code, sec. 2763. During all the time, however, that the plaintiff's actual possession continued, he held *only a title bond;* before he obtained a deed he had lost actual possession and never regained it. We take it to be clear that seven years' possession of granted land, under a title bond alone, will not make out a title under the 1st section of the act of 1819, although it would be valid as a defense under the 2d section.

The language of the 1st section will admit of no doubt on this point. To make out such title the party must have had, by himself or those through whom he claims, seven years' adverse possession, "holding by conveyance, devise, grant or other assurance of title purporting to *convey an estate in fee,*" or as it is usually expressed, color of title. A title bond does not fall within either of these terms; so it is clear

that, if nothing else appears than the seven years' adverse possession of the plaintiff under his title bond, his title would not be complete. It is argued, however, that this possession, in connection with the possession and color of title of the plaintiff's vendor, Butler, is sufficient. That is to say, the possession of the plaintiff, while holding under his title bond, was the possession of Butler, his vendor, and as Butler had color of title the plaintiff's possession would perfect his (Butler's) title in seven years, and this title passed by the subsequent deed of Butler to the plaintiff. There can be no doubt that the possession of vendor and vendee may be connected, but it does not follow that when thus connected it will make out a title under the first section; it may only be a defense under the second section. Successive possessions of vendor and vendee, where there is privity between them, may, however, be connected to make out a title under the first section. Such is the language of the statute: "Any person having, by himself or those under whom he claims, seven years adverse possession of any lands," etc.; but this is coupled with the provision that the holding must be by conveyance, or some assurance purporting to convey the fee. So that the successive possessions, in order to make out a title, must each have been of a character to make out the title alone if of sufficient time; that is to say, each must have been under color of title. Successive possessions, each by deed or color of title, will be sufficient if together they make out seven years; but possession for part of the time under color of title

40—VOL. 5.

and the balance of the time by title bond, will not be. In other words, to make out a title in this mode, the adverse possession for seven years must have been under color of title for the entire period; otherwise it will only be a good defense under the second section.

So that the question recurs, as the controlling one in the case, was the possession of the plaintiff, in law and in fact, the possession of his vendor, Butler, or was it his own possession? If the former, then it was a possession under color of title (that is, Butler's grant); if the latter, it was not a possession under color of title, as the plaintiff himself held only a title bond.

The argument for the plaintiff is, that while in possession under his title bond, he was the tenant at will of Butler, or occupied a *quasi* relation of that sort, so that Butler had the right to treat the possession as his, and thus to perfect his title. It is supposed that the case of *Valentine* v. *Cooley*, Meigs, 613, supports this view. That case, however, holds that a defendant may connect his possession under a deed with his previous possession under a parol purchase to make out a defense. This would be manifestly so, under the second section of the statute, to the extent of the actual possession. It is true Judge Greene says in that case, that while holding under the parol purchase the defendant was tenant at will of his vendor who held a deed, and therefore it was his possession. The distinction between a parol purchaser and one by title bond in this respect, will be hereafter . noticed.

We held, in the unreported case of *Barnes* v. *Vickes,* at Nashville, December term, 1874, that a plaintiff could not make out his title by connecting his possession under a deed with his previous possession under a parol purchase, *but in that case the vendor of the plaintiff had no color of title to the undivided half of the land in dispute.* The case of *Valentine* v. *Cooley* was not referred to, nor the distinction between the cases pointed out, yet they are not in conflict.

We return, however, to the question, whether the possession of the plaintiff in this case was the possession of his vendor, within the meaning of the first section of the act of 1819. There are authorities holding, or seeming to hold, that a purchaser by parol contract, who goes into possession, is tenant at will of his vendor.

The first section of the original English Statute of Frauds, in substance enacted that any attempt to create an estate in lands by livery of seizin only and without writing, should have effect only as a lease or an estate at will. See Sugden on Vendors, p. 51. And although this section is not re-enacted in our statute, yet persons in possession under a parol purchase have been said to be tenants at will of their vendor. But this court held, in *Chilton* v. *Niblett,* 3 Hum., 404, that such parol purchaser was not entitled to notice to quit, as he would be were he strictly tenant at will; he is only, said the court, for some purposes held *quasi* tenant at will. This is sometimes said to be upon the ground that the parol contract of sale is void. A purchaser in possession under a title bond would

not be in this attitude, as his contract of purchase is not void. Yet there are authorities holding that any one who enters under a *contract* of purchase is tenant at will of his vendor, or *quasi* tenant at will. This is upon the theory that the written contract for the purchase alone has no reference to the question of possession, but the purchaser entering into possession does so either without authority, or upon parol authority, which in either event makes him tenant at will of his vendor, so that he cannot dispute the title of his vendor. *Lewis* v. *Hawks*, 23 Wallace. If the party entering into the possession in such case without express authority, must become the tenant of any one, it would seem more reasonable to hold him the tenant of the true owner; but it is said in such cases, "the possession of the tenant must be referred either to a legal or adverse title; but as the entry is with the consent of the person entitled to the possession, it cannot be considered adverse, and as the agreement confers no legal title, the only alternative seems to be that the person in possession must by construction of law be considered tenant at will." See 1 Greenleaf's Cruise on Real Property, mar., p. 243. On the other hand, Mr. Sugden, in speaking of contracts of sale which may be executed, says: "If the purchaser was tenant at will of the estate, the contract terminates the tenancy." See p. 131. We will see hereafter the extent to which our own cases discuss the question of the possession of persons who are tenants by construction of law.

Conceding for the argument, that, as between vendor

and vendee, where no title passes, the latter, by con-struction of law, for some purposes stands in the atti-tude of tenant at will, or *quasi* tenant at will to the former, the question recurs, is this the character of possession contemplated by the first section of the act ·of 1819; that is to say, is the vendor's title made perfect under this section, by a possession held for him, by one who is in possession in fact as purchaser, but who by construction of law is tenant at will, or *quasi* tenant at will of his vendor. In *James* v. *Patterson's lessee*, 1 Swan, 309, it appeared that the defendant had gone into possession under a parol contract of purchase from the plaintiff and held possession for ·seven years for himself. The circuit judge charged that the contract of sale was void in law, and the defendant was tenant at will, "and could not dispute the title of his landlord or set up the statute of limitations as a defense to the action, unless he had dis-claimed his tenancy and set up to hold the land for himself, and the fact of his adverse holding must have been so notorious as to show the plaintiff that the defendant was holding for himself." This, said Judge McKinney, delivering the opinion of the court, is erroneous in two respects: first, in assuming that the defendant, by reason of having gone into posses-sion under a contract of purchase void in law, was thereby placed in the relation of tenant so as to be estopped to gainsay the title of Patterson; and second, in holding that the adverse possession must have been known to the plaintiff.

The relation of one who enters into the possession

of land under a contract of purchase, though verbal, is in almost every respect unlike that between tenant and landlord. The former, in point of fact, enters to hold exclusively for himself; he is neither to render rent or other service, nor is he to restore possession of the premises to the seller; he is under none of the positive obligations of a tenant by actual contract. "He owes no fealty to the seller, and in claiming to hold in opposition to him, or in refusing to surrender the possession to him, he is guilty of (no) breach of faith."

The court held, that the rule that a tenant could not dispute his landlord's title, only applied to cases of tenancy by contract, and not to cases of tenancy or *quasi* tenancy by construction of law, which only existed in the absence of proof to the contrary. This court had previously held, in the case of *Vance's heirs* v. *Johnson*, 10 Hum., 214, where it was decided that the widow of the mortgagor might attorn to adversary title. Judge McKinney further referred to the cases of *Turner* v. *Granger*, 5 Hum., and *McKissick* v. *McKissick*, 6 Hum., holding that the donee of slaves under a gift void for want of writing, obtained a good title by adverse possession under the statute of limitations; and concluded by holding that the defendant in the case before the court was protected by the second section of the statute, to the extent of his actual possession. In *Gudger* v. *Barnes*, 4 Heis., Judge Freeman cites and approves the language of Judge McKinney above alluded to, and adds, "so far, then, as possession under a title bond goes, it is a possession for himself and

adverse to the possession of the vendor," so that if the possession be held seven years the party would be protected. The same principle is stated by Judge . Milligan, in *Fain* v. *Headerick*, 4 Cold.

Now, upon these authorities, can it be held that a purchaser in possession under an executory contract, whether by parol or in writing, is holding the possession for his vendor so as to make out the latter's title by the statute of limitations, against a superior title in a third party? The possession of the vendee in such case is not the possession of the vendor in fact; it is not his possession by a tenant holding for him by actual contract, but a tenancy or *quasi* tenancy for some purposes by construction of law. Is this the character of possession contemplated by the first section of the act of 1819? Let us see to what consequence this conclusion would lead us. The possession of the purchaser continued for seven years under title bond, although in fact adverse to his vendor, is yet, according to the argument, by construction of law the possession of his vendor, who has a deed or color of title, and will therefore perfect the latter's title against an otherwise superior title in another, and yet this same seven years' possession of the purchaser will bar the right of the vendor to recover back the possession. While the possession has been adverse and barred the vendor's right to recover of the purchaser by reason of the second section, it has at the same time perfected the vendor's title under the first section. An argument that leads to such a result, to say the least of it, deserves careful scrutiny. Suppose a purchaser

makes separate purchases by title bonds of the same land from two different vendors, neither having the title, but both having color of title, and goes into possession and holds for seven years for himself; at the end of that time, which of his vendors will have a perfect title? He was not in fact the tenant of either; whose tenant would he be by construction of law? Not necessarily from the one from whom he first purchased, for, as we have seen, he is not estopped to deny his title, and might well purchase and hold under another title. Again, as held in the two cases referred to, the vendee is not estopped to deny his vendor's title, and as a consequence he may purchase in the superior title and hold under it. The result would be, that his possession would by construction of law be referred to his first vendor, and in seven years perfect his title against the otherwise superior title held by the vendee himself; in other words, the vendee's own possession for seven years, would perfect the vendor's title against the superior title held by the vendee himself. The fact that in equity a vendee purchasing in a superior title as against the claim of the vendor for purchase money, can only be allowed a credit for the amount paid in purchase of the title, does not alter the principle that the vendee may thus fortify himself against a recovery of the land itself by the vendor.

Again, another result of the doctrine contended for, would be this: if it be sufficient in a case like this to show that the vendee claims under a vendor who has color of title, it would answer the purpose equally

well to show, that any one under whom the vendee claims, no matter how remote, has color of title, and the possession would, by construction of law, be referred to such person and his title protected; so that if there be a dozen persons who successively sell and buy from each other by title bond, through a period of time, no matter how long, if the last purchaser take and hold possession for seven years, the title would be perfected, *provided* it appear that any one of the number held a deed or other color of title.

The theory of limitations as to land titles formerly was, that it only barred the remedy, but did not create a title. See Sugden on Vendors, p. 266. But with us it is different. The first section of the act of 1819 designates what is necessary to create a title by limitation. The second section relates to cases where the remedy of the true owner is barred only. As was held in *Dyche* v. *Gass' lessee,* 3 Yer., this was intended to protect all possesions under title bond, or possessions other than that defined in the first section. The passage of the second section shows that possession under the first section, to make out a title, was intended to be an actual possession either by the party himself or his tenant. It is argued that the relation of vendor and vendee is similar to that of mortgagor and mortgagee, and that the latter's possession is in all respects the possession of the former; but as shown by Judge McKinney, in *Vance* v. *Johnson,* 10 Hum., the relation of mortgagor and mortgagee is one, *sui generis,* and constitutes no safe analogy on the present question. Sir Thomas Plummer said: "The

relations of vendor and purchaser, principal and agent, landlord and tenant, of debtor and creditor, trustee and *cestui que trust,* have all been applied to the relation of mortgagor and mortgagee. . . . The truth is, it is a relation perfectly anomalous and *sui generis.*" See 2 Washburn on Real Property, p. 160.

It is further argued that the relation of trustee and *cestui que trust* exists between vendor and vendee. For some persons, and especially as respects purchase money unpaid and questions connected therewith, this may be true, but this does not affect the question as to the title or character of possession.

There is no question of purchase money involved in the present case. Section 2768 of the Code was only intended to enact that the possession of the purchaser shall not be adverse to the claim of the vendor's purchase money, and was doubtless intended to meet the case of *Ray* v. *Goodman,* which, however, was overruled by *Gudger* v. *Barnes,* without reference to the section.

It must be borne in mind in considering this question, that the superior paper title is in the defendant, and that the effort is to defeat this title by the statute of limitations, and we are of opinion that the possession must be with the party who has the color of title, either by himself or his tenant, and not by a tenant who is merely such for some purposes by construction of law, and who in fact holds adversely and for himself.

The whole question is, was the plaintiff's possession during the time he held under the title bond of Butler,

his own possession or the possession of Butler? We cannot say that it was Butler's possession for one purpose and his own possession for another.

We are of opinion that the plaintiff was holding for himself, and his possession being under a title bond, it was not sufficient to vest him with a superior title, and that the judgment should be affirmed.

COOPER, J., delivered the following dissenting opinion:

In this action of ejectment, the defendants have the older paper title. The plaintiff's right of recovery depends upon whether the title in fee had, previous to the entry of the defendants on the land, become vested in him by virtue of seven years adverse possession under the Code, sec. 2763.

The plaintiff's vendor took possession of the land in March, 1852, and procured a grant from the State on the 12th of October of the same year. After remaining in possession for two years and four months, he sold to the plaintiff, giving him a bond to make title when the purchase money was paid. The plaintiff took possession at once as purchaser, and remained in actual occupation until 1864, when a part of the enclosing fences was burned. He continued to claim the land, using it by pasturing his cattle thereon until August, 1866, when he obtained a deed in fee from his vendor. In October, 1867, plaintiff sold a part of the land to the defendant, Cooke, by title bond, who took possession, rebuilt and extended the

fences. About the same time, plaintiff sold another part to one Mize by title bond, but the sale was afterwards rescinded, the purchaser not being able to pay the price. In April, 1871, the defendant, Ement, who has the older title, obtained possession of the land by action of ejectment· to which plaintiff was no party. The present suit was commenced on the 21st of June, 1871, was tried by the circuit judge without the intervention of ·a jury, and decided in favor of the defendants. The plaintiff appealed in error.

The possession of the plaintiff and his vendor has been for a sufficient length of time to vest "a good and indefeasible title in fee" to the land, previous to the recovery of the defendant, Ement, if the possession of the plaintiff can be treated as the possession ·of the vendor under his grant, or coupled by relation with his own after-acquired title by deed in fee. ·Curiously enough, the precise point raised by the facts seems never to have passed into judgment, and the principles on which, logically, it ought to be determined have, perhaps, not been consistently adhered to or applied. The judgment of the court below leads to the unsatisfactory· conclusion that a vendor, who contracts to sell by title bond, cannot, although he holds under a proper assurance of title, so connect his possession with that of his vendee as to perfect his title by the statute of limitations, if the contract should be rescinded. It leads also to the anomalous, and still more unsatisfactory conclusion, that while the purchaser of land by parol, who subsequently obtains a ·deed, may couple his possession before with his pos-

session afterwards to make out a good title by virtue of the statute, yet a purchaser by regular title bond or written contract has no such advantage. It involves the startling proposition that the possession of a vendee by title bond at once stops the running of the statute, under the Code, sec. 2763, in favor of either vendor or vendee. I cannot concur in a conclusion which results in such consequences.

The adverse possession which gives title by the statute is possession by the party himself " or those under whom he claims." Possession, therefore, by different parties in privity of title may be connected to make out the bar. If, in this case, the vendee had been in possession by his deed, obtained in August, 1866, for four years and eight months, his possession could have been coupled with that of his vendor for two years and four months under his grant, to perfect his title by virtue of the. statute. It is only because the possession of the plaintiff under his title bond, and the possession of his vendees under their title bonds, cannot be coupled with the possession of the plaintiff and his vendor under the assurances of title purporting to convey a fee, that the benefit of the bar of the statute is supposed not to apply. The possession, according to the authorities, need not be literally by the party himself. It may be by a tenant, by a member of the claimant's family, by an employee engaged to work on the land or to drive cattle on it for pasturage, or by a person put on the premises to take charge of them without paying rent. *Hammett* v. *Blount,* 1 Swan, 385; *Waddle* v. *Stuart,*

4 Sneed, 534; *West* v. *Lanier*, 9 Hum., 762. The possession of a tenant is, of course, for the purposes ·of the statute, the possession of the landlord, even if he be only a tenant at will. *Craddock* v. *Stalcup*, 1 Tenn., 351. A mortgagor, it has been held, is, " in the strictest sense," a tenant at will of the mortgagee. *Henshaw* v. *Ward*, 9 Hum., 568. So is a *cestui que trust* of his trustee. *Marr* v. *Gilliam*, 1 Cold., 488; Hill on Trustees, 266. A purchaser of land by parol, although not strictly a tenant at will, is a *quasi* tenant at will, and cannot resist an action of ejectment, ·or an action of forcible entry and detainer, within the time of limitation of these actions. *Chilton* v. *Niblett*, 3 Hum., 404; *James* v. *Patterson*, 1 Swan, 309; *Fain* v. *Headerick*, 4 Cold., 335; *Beard* v. *Bricker*, 2 Swan, 51; *Sullivan* v. *Ivey*, 2 Sneed, 488. If he go into possession under his parol contract, the authorities agree that he may couple his possession before with his possession after the deed so as make out the bar of the statute. *Napier* v. *Simpson*, 1 Tenn., 452; *Valentine* v. *Cooley*, Meigs, 613. " These two possessions," says the eminent judge who delivers the opinion of the court in the first of these cases, " being consistent, may be united and thus afford a good bar." The same is true, as we have seen, of the possession of mortgagor and mortgagee, trustee and *cestui que trust*. Does the possession of the vendor and vendee by a valid contract in writing stand upon the same or a different footing? That is the question to be considered, and which, it seems to me, is almost solved by its statement.

A purchaser of land by title bond, or other writ-
ten contract, has at law only a personal obligation of
the vendor, not an interest in the land.   *Hopkins* v.
*Webb*, 9 Hum., 519.    It is only in equity that his
right to the land is recognized.    His possession of
the land, if he go into possession, is not, therefore, by
virtue of his title bond or contract, but by a con-
tract, express or implied, outside of it.    At law, his
right to the land is altogether conditional upon the
payment of the purchase money, and it is not the
less conditional if he be put in possession.    In the
absence of positive contract, the possession would be
merely permissive, and in the nature of a tenancy at
will.    Technically, the purchaser is a mere licensee,
whose license may be revoked at any moment.    *Bur-
nett* v. *Caldwell*, 9 Wall., 290, citing Co. Litt. 52, b;
*Mumford* v. *Whitney*, 15 Wend., 380;   *Dolittle* v. *Eddy*,
7 Barb., 78;   *Watkins* v. *Holman*, 16 Pet., 54;   *Blight*
v. *Rochester*, 7 Wheat., 535;   *Marlin* v. *Willink*, 7
S. &. R., 297.    And see *Buell* v. *Irwin*, 24 Mich.,
145.    He cannot dispute the title of his vendor, ordi-
narily, any more than a lessee can question the title
of his lessor.    *Knox* v. *Thomas*, 5 Hum., 573;   *Jack-
son* v. *Bard*, 4 Johns., 230;   *Jackson* v. *Walker*, 7
Cow., 637;   1 Cow., 605;   *Jackson* v. *Ellis*, 13 Johns.,
118;   *Pitts* v. *Wilder*, 1 N. Y., 525;   *Jackson* v. *Stewart*,
6 Johns., 34;   *Jackson* v. *Moncrief*, 5 Wend., 26;
*Furlong* v. *Garrett*, 6 Rep., 351.    And the authori-
ties are uniform that he may be turned out by eject-
ment, with notice in England, without notice in this
State and in the United States generally.   *Lafferty* v.

*Whitesides,* 1 Swan, 143 ; *Burnett* v. *Caldwell,* 9 Wall., 290 ; *Lewis* v. *Hopkins,* 23 Wall., 119.    The statute, Code, sec. 3243*a,* which modifies the common law rule, and makes a bond for title a good defense to an action of ejectment by the vendor, only demonstrates the existence of the rule, and does not affect its bearing on the question under consideration.    For it was intended to confer on the vendee a new right, not to take away one which previously existed, and the rights of the vendee must still be the same in, other respects as if the contract of sale were, in a different form from that of a title bond.    If the statute be held to go further, it would convert a title bond into an assurance of title purporting to convey an estate in fee, and possession under it would be sufficient.    And by the Code, sec. 2768, the possession of the vendee is expressly declared not to be adverse to, the " right or interest " of the vendor, which at law is the legal title, and in equity a lien for the purchase money, creating virtually the relation of mortgagor and mortgagee.    " The legal estate remaining in the vendor," this court has said in such a case, " is perfectly consistent with the possession and claim of the vendee.    The interest is as large, as valuable at least, as that of a mortgagee.    In such case, the title of the vendor and vendee, mortgagor and mortgagee, constitute one title, and the possession enures to the benefit of that title."  · *Norris* v. *Ellis,* 7 Hum., 463. And the vendee by written contract, as our courts have uniformly held, occupies such a fiduciary relation to the vendor that equity will not permit him to

throw off the relation by purchasing an adverse, or securing a better title, and his possession is considered that of the vendor to the extent required to protect his rights. *Mitchell* v. *Barry,* 4 Hay., 142; *Meadows* v. *Hopkins,* Meigs, 281; *Whiteside* v. *Jackson,* 1 Wend., 422; *Galloway* v. *Finley,* 12 Pct., 295. These principles are conceded in *Redmond* v. *Bowles,* 5 Sneed, 547, where the particular case was taken out of the rule because the contract of sale was in parol and void, an exception the correctness of which admits of grave doubt.

The argument in favor of the finding of the circuit judge is rested mainly, if not entirely, upon the position that the possession of the vendee is for himself, and necessarily adverse to the vendor, or may be shown to be adverse, thereby enabling him to acquire rights in conflict with those of the vendor, and consequently such possession cannot be treated as the possession of the vendor. *James* v. *Patterson,* 1 Swan, 309; *Redmond* v. *Bowles,* 5 Sneed, 547. But the same is true of the possession of a tenant who openly disowns the title of his landlord. And yet the Supreme Court of the United States and this court have both held that until the bar of the statute of limitations actually attaches in favor of the tenant as against the landlord, the possession of the tenant is still the possession of the landlord. "If," these courts have said, "the landlord suffers the time of limitation to run out without making an entry or bringing a suit, each party may stand upon his right, *but until then the possession of the tenant is the possession of the land-*

41—VOL. 5.

lord." *Peyton* v. *Stith,* 5 Pet., 488, 492; *Duke* v.
*Harper,* 6 Yer., 280.  And it must be so on the
plainest principles of justice.  For, otherwise, the pos-
session of the landlord might be broken by the
fraudulent act of a person who has gone in under
him, and suspended for years by the litigation nec-
essary to regain possession.  The same principle ap-
plies, of course, in all cases where one person en-
ters in a fiduciary relation under another, and has
been expressly extended by the Supreme Court of the
United States to the relation of vendor and vendee,
trustee and *cestui que trust,* and mortgagor and mort-
gagee.  *Willison* v. *Watkins,* 3 Pet., 43.  And it has
been applied by this court to the relation of tenants
in common.  *Cunningham* v. *Roberson,* 1 Swan, 138.
Logically, the possession, during the transition period,
may be considered as the joint possession of both par-
ties, as where two grants or deeds overlap and each
grantee is in possession of part of the land granted,
but neither of the overlap.  *Stewart* v. *Harris,* 9
Hum., 714.  Or, more accurately, as where two per-
sons are in actual possession of the same land, in
which case the law adjudges the possession to him
who has the superior title.  *Fancher* v. *DeMontegre,*
1 Head, 40.  In this view, the vendor, lessor or
mortgagee has the better right, and consequently the
possession, until the bar of the statute has attached,
when the better right and the possession pass to the
other party.  In this view, too, there is no break in
the chain of possession required to perfect the common
title.  Any other view breaks the connection, and pre-

vents those who in the strictest sense claim in privity from having the benefit which the statute contemplates. If a sale by title-bond should be held to break the possession so as to stop the running of the statute, that mode of conveyance would cease to be used, and the fact that it has continued to prevail under all of our statutes of limitation is persuasive that it has never heretofore occurred to the professional mind that it would have that effect. A construction of the statute which would necessitate a change in the mode of conveying land, unless imperatively demanded by the positive language or clearly expressed intent of the Legislature, would seem to me not to be based on sound exegesis.

In a recent case decided by the Supreme Court of Wisconsin, the very point we have been discussing seems to have been raised and decided. The court is reported as holding: "Possession of land by the vendee under an executory contract of sale is the possession of the vendor, and if the vendor has acquired a legal title by his own and his vendee's adverse possession, he and not the vendee may maintain ejectment. against a stranger, unless, after payment of the purchase money, the vendee has retained possession long enough to acquire a prescriptive title in himself as against his grantor." The cases cited in support of the conclusion are: 13 Wis., 472; 19 Wis., 537; 14 Barb., 454; 1 Cow., 605; 13 J., 118; 4 J., 230; 63 Barb., 525; 1 Comstock, 525. An abstract of the opinion is given in 6 Rep., 351, and 18 Alb. L. J., 215, under the name of *Furlong* v. *Garrett.*

The judgment of the circuit court should be reversed, and judgment rendered here for the plaintiff.

DEADERICK, C. J., concurs in the dissenting opinion.