(9 App. Div. 20.)

### RHOADES et al. v. FREEMAN et al.

(Supreme Court, Appellate Division, Third Department. September 22, 1896.)

1. VENDOR AND PURCHASER—ESTOPPEL TO DISPUTE GRANTOR'S TITLE.
    A person in possession of land under a contract to purchase is estopped to dispute his vendor's title.

2. EJECTMENT—TITLE TO SUSTAIN.
    Plaintiffs in ejectment claimed as heirs of R. and W., to whom one M., 57 years before, had executed a deed purporting to convey the land. There was no evidence that either R. or W. had ever been in possession under the deed. Defendants and their grantor had been in possession of the land for many years under a contract of purchase executed by W., as "assignee, &c." There was no evidence that R. and W. owned the land in partnership, or that W. had any authority to sell any interest except his own. *Held,* that the circumstances under which defendant took possession did not show any title in plaintiffs as heirs of R.

Appeal from circuit court, St. Lawrence county.

Ejectment by Lyman Rhoades and others against Nelson H. Freeman and another. The complaint was dismissed, and plaintiffs appeal. Reversed as to plaintiff Martha E. Weed. Affirmed as to the other plaintiffs.

Argued before PARKER, P. J., and LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

A. X. Parker, for appellants.
Earl Bancroft, for respondents.

PARKER, P. J. The action is ejectment. It is averred in the complaint that each of the several plaintiffs is the owner in fee of an undivided interest in the premises in question, the interest of each being specified, and that the defendants unlawfully withhold the possession thereof from them. The answer is substantially a general denial of plaintiffs' ownership, and a claim of title in defendants by adverse user. On the trial the plaintiffs did not prove any title in themselves. They showed a conveyance from Gouverneur Morris to Lyman Rhoades, William H. Weed, and Charles W. Weed of a tract of land which includes the premises

in question, dated August 1, 1836. And it appears that three of the plaintiffs are heirs at law of said Rhoades, five of them heirs at law of said William H. Weed, and two of them heirs at law of said Charles W. Weed. But they did not show that Morris ever had any title to or possession of such land, or that any of his said grantees ever took possession of the same. It appeared that the defendants had been in possession of the land for many years, and the plaintiffs therefore utterly failed to show any title to the lands, or a right to eject the defendants, unless such title or right can be claimed from the circumstances under which said defendants went into possession, and have since held the same. Gideon Freeman went into possession of the land under a written contract for the purchase of the same. In such contract, "Charles W. Weed, assignee, &c.," as party of the first part, agrees to sell to said Freeman, as party of the second part, all of certain premises therein described, which description includes the land in question; and such contract is signed by Charles W. Weed, assignee, etc., by C. A. Parker, as his attorney, and is dated November 1, 1860. A contract for the same premises had previously been executed by Charles W. Weed, assignee, etc., to one Collins Barnes, dated January 1, 1857. Such contract was signed by Charles W. Weed, assignee, by E. Dodge, as his attorney. All of Collins Barnes' interest in such contract was subsequently acquired by Gideon Freeman. On February 13, 1873, Gideon Freeman contracted to sell the premises so contracted to him to the defendant Nelson H. Freeman, and subsequently, on December 16, 1873, executed to him a quitclaim deed of the same. When Nelson H. Freeman took his contract from Gideon, he took the possession which Gideon then had, and has ever since retained the same. Under the contract which Gideon took through Parker as attorney, he was to pay $881.79 for the whole premises so purchased. No more than $213 has been paid upon that contract. Neither was the purchase price of the contract executed to Collins Barnes through Dodge, as attorney, ever paid in full.

The plaintiffs claim that Nelson H. Freeman, as the grantee of Gideon Freeman, is in the position of a vendee of the premises, having taken the possession thereof under the contract to Gideon, that he is therefore estopped from disputing the title of Gideon's vendor, and that the possession which he thus obtained cannot be the basis of a possession adverse to such vendor. This claim, I think, is clearly correct. I understand it to be well settled that one who goes into possession of land under a contract to purchase the same cannot attack or dispute the title of his vendor without surrendering the possession which he thus obtained. If he refuses to perform the contract on the ground that the vendor cannot give a good title, he cannot do so and still hold the possession. If he is in default in his payments for that reason, or for any other, and the vendor brings ejectment against him, he may, by answer, set up any equitable defense he may have. He may tender full performance, and ask a judgment that the vendor convey to him, or he may show that he has defaulted, owing to the vendor's inability

to perform, and he may ask that upon his surrender of possession he be repaid the portion of the purchase price which he has already paid, or he may set up any other equity arising to him out of the contract, and the court will try the issue so tendered by the answer. And although the action is, in form, one of ejectment, it will adjust the equities between them as the facts require; but, being in default, he cannot defend against an ejectment by the vendor on the ground that some one other than the vendor has the title, or that the possession which he took under his contract has ripened into an adverse title in himself. Jackson v. Hotchkiss, 6 Cow. 401; Hotaling v. Hotaling, 47 Barb. 163; Risley v. Rice, 40 Hun, 585, 586; Pierce v. Tuttle, 53 Barb. 167; Greene v. Couse, 127 N. Y. 386, 28 N. E. 15; Tompkins v. Hyatt, 28 N. Y. 347.

But the serious question in this case is whether these plaintiffs stand in the position of vendor to the defendants. Have they succeeded to the title and interest of the defendants' vendors? Did Gideon Freeman acquire the possession and contract to purchase from those whom they now claim to represent? There is no evidence in the case showing that Rhoades, William H. Weed, and Charles W. Weed ever owned the premises as co-partners, and there is no evidence showing any authority to Charles W. Weed to contract to sell any one's interest in the property except his own. Indeed, there is no evidence in the case to show that they, or any of them, had any title whatever to the property, except so far as it may be presumed by way of estoppel against Gideon Freeman by reason of the contracts above referred to. We have no right, therefore, to start with the assumption that the three owned the property, and that, therefore, Charles W. Weed was acting for them as well as for himself. There is not a particle of evidence to show that either of them, except Charles W. Weed, ever made any claim to the property, or ever knew of the existence of the deed from Morris to them. Nor does Charles W. Weed, in the contract, assume to sell any interest belonging to them. He contracts to sell the whole title as if he owned it. He assumes to act for himself only, and Gideon Freeman contracted with him alone. Rhoades died in 1849, and therefore it is clear that, in making the contracts above alluded to, Charles W. Weed was not acting for him, nor for a firm of which he was a member. It is true that Weed is described as "assignee," but the plaintiffs' counsel claims that that is a mere descriptio personæ, and I think it must be so treated. Clearly, it is not any evidence that he was claiming to act for Rhoades, Weed & Weed, nor does it indicate that he was acting for any one but himself.

I think it very clear that Gideon Freeman contracted with Charles W. Weed as the owner of the premises, and received his possession from him as such owner. He was the vendor, and, as against him, Gideon Freeman, and also the defendant Nelson H. Freeman, are estopped from setting up title in another or in themselves. Whatever idea Nelson may have had of Charles W. Weed's title when he took the deed from Gideon, the possession which he thus acquired came from Charles W. Weed, and so long as he holds it he must

hold it in subordination to Charles W. Weed's claim. Tompkins v. Snow, 63 Barb. 525; Dyke v. Spargur, 143 N. Y. 651, 655, 38 N. E. 269. If Charles W. Weed were the plaintiff in this action, I do not see how Nelson Freeman could defend against his claim of ownership, nor maintain any such defense as he has set up in his answer. There may be equities in the case which the court would adjust, had he set them up, but he has not done so. He relies for his defense upon the sole claim that none of the plaintiffs have any title to the premises, and that he himself has the title by adverse user. As against Charles W. Weed, and those succeeding to his rights, he is estopped from maintaining such a defense; but, as against any person other than them, he has the right to rely on his possession, and put the claimants to proof of their title.

The evidence discloses that all of the plaintiffs except two, viz. Martha E. Weed and Charles H. Dougliss, claim to be owners and interested in the premises as heirs at law of either Lyman Rhoades or William W. Weed. In that character they do not stand in the position of vendors to the defendant. They have not shown that the defendant contracted to purchase from their ancestors, nor that he derived his possession from them. And, having utterly failed to show any title in their ancestors or in themselves, they have failed to maintain the claim which they make in this action. There is no force in the suggestion that in bringing this action such plaintiffs have ratified the contract made by Charles W. Weed, and therefore stand as vendors to the defendant. It is a sufficient answer that Charles W. Weed never assumed to contract for their ancestors or for them, and hence there is no contract for them to ratify.

The question remains as to what effect the fact that two of the descendants of Charles W. Weed are plaintiffs herein should have in the disposition of this case. One of these descendants, Charles H. Dougliss, is a son of a daughter of Weed. His mother is dead, and, as he testified, by will gave all her property to her husband, his father. The father is dead, leaving a will. How he disposed of this property does not appear. Under such circumstances, it is quite clear that Charles H. Dougliss has not shown that he succeeded to the title, or any part thereof, which Charles W. Weed had in the premises. As to these plaintiffs, therefore, the order dismissing the complaint was clearly right. The other plaintiff, Martha E. Weed, is a daughter of Charles W. Weed, and, inasmuch as we must assume that he died intestate (Mitchell v. Thorne, 134 N. Y. 541, 32 N. E. 10), she inherited a share of his rights in these premises. In the complaint she claims that she owns an undivided one-twelfth of them. The evidence shows that she has inherited at least an undivided one-twelfth of Charles W. Weed's interest therein, which interest, as against this defendant, must be deemed to be the whole title. Code Civ. Proc. § 1500, allows a person entitled to the possession of land as a tenant in common to maintain an action to recover his undivided share therein. Under this section, therefore, it seems that the plaintiff Martha E. Weed made out a prima facie case against these defendants for such undivided share

of the premises as she inherited from Charles W. Weed, and that the dismissal of the complaint, as against her, was an error.

The judgment as against Martha E. Weed is therefore reversed, with costs, and as against all the other plaintiffs it is affirmed, with costs.　All concur.