■ LYMAN STANSKY, Appellant, v MILTON SHERMET et al., Respondents.—Judgment, Supreme Court, New York County, entered June 17, 1980, dismissing plaintiff's complaint and granting other relief to defendants, is unanimously modified, on the law and the facts, so as to substitute in the fourth decretal paragraph the phrase "except as hereinafter provided" in place of the phrase "in its entirety"; and to substitute in the fifth decretal paragraph the phrase "to plaintiff Lyman Stansky" in place of the phrase "to defendant Herman Finesod"; and findings of fact to the extent inconsistent with the memorandum of this court herein are reversed and findings of fact consistent therewith are deemed made; and the judgment is otherwise affirmed, without costs. Plaintiff contracted to buy from defendant Finesod a co-operative apartment for the sum of $45,500, payable $4,500 down payment, which plaintiff made, and the balance of $41,000 to be payable at the closing, the down payment to be held in escrow pending the closing by the attorneys for the seller. The seller, prior to the closing, had moved out of the apartment and the buyer had moved into the apartment on January 6, 1978, and he was still in possession at the time of the trial (March, 1980). By the contract, the seller represented that the property referred to (i.e., the co-operative shares and the proprietary lease) "are and will at closing be free and clear of liens, encumbrances and adverse interests." Before and at the scheduled closing in January, 1978, it developed that there were various encumbrances with respect to the property, including a judgment in favor of Irving Trust Company, which was holding the stock and proprietary lease as security for the underlying debt, a State Tax Commission lien or judgment, and a claim for unpaid maintenance as well as some Federal tax liens. The amount to be paid on the closing would have been enough to clear all these encumbrances except for the Federal tax liens, and seller had made arrangements to do so, including having a representative of Irving Trust Company present with a satisfaction of the judgment, and the shares and the proprietary lease were in the possession of the attorney for Irving Trust Company available for delivery. We may assume that with reasonable good faith co-operation on both sides it would have been practical to clear all of these matters except the Federal tax liens out of the purchase price simultaneously with the closing, and the seller certainly made every offer to try to do so, while plaintiff buyer was quite un-co-operative. However, the Federal tax liens amounted to $51,003, i.e., more than the balance of the purchase price. They obviously could not be cleared by the use of the purchase price. Seller contended that the Federal tax liens were invalid because (a) he really did not owe them and (b) their validity depended on their being filed in the county of his residence, and he was not a resident of Queens County at the time they were filed in Queens County (see Lien Law, § 240; Bankers Trust Co. v Equitable Life Assur. Soc. of U.S., 19 NY2d 552). Seller offered affidavits and other proof to substantiate his contention that he was not a resident of Queens County at the time the liens were filed. The buyer, however, insisted that the liens be cleared of record. This was simply not possible at the time (the liens were in fact not

released until November, 1979, almost two years after scheduled closing). The trial court held that defendant could have established the invalidity of the Federal tax liens (presumably by the proffered evidence of his non-residence in Queens). The trial court further held that the plaintiff buyer had made it impossible for the defendant seller to perform, and had anticipatorily breached the contract, by plaintiff's refusal to accept the various proposals the seller had made for the use of the proceeds of the purchase price to clear the other liens (with adequate security to the buyer) and his insistence that the satisfaction of judgment be filed with the county clerk before he paid the money rather than the other way around. The court held that this excused further performance by defendant, and the court therefore held the plaintiff buyer in default irrespective of the Federal tax liens. While we agree with the trial court that the plaintiff buyer's position with respect to the items other than the Federal tax liens was unjustified, we think plaintiff was not unreasonable in refusing to consummate the transaction with the risk of the Federal tax liens being found valid. He was not required at his peril to decide the question of fact whether the seller had been a resident of Queens County at the time the tax liens were filed. But in those circumstances, the remedy of both parties was prescribed by the contract which provided: "If Seller shall be unable to transfer the Lease and the Shares in accordance with this agreement and any conditions hereof, then the sole obligation and liability of Seller shall be to refund to Purchaser, without interest, all sums theretofore paid on account of the purchase price, and upon the making of such refund this agreement shall be deemed cancelled and shall wholly cease and terminate, and neither party shall have any further claim against the other by reason of this agreement. However, nothing contained in this paragraph shall be construed to relieve Seller from liability due to a misrepresentation or wilful default." We do not think this was a case of misrepresentation or willful default. We think that the "misrepresentation" which would bar the effectiveness of paragraph 18 would have to be a willful misrepresentation which this was not. We further agree with the trial court that the representation that the stock and lease are free and clear of encumbrances had "the generally accepted meaning that said documents will be delivered free and clear of said encumbrances." Thus, with the problem of the Federal tax liens unresolved, plaintiff buyer had his choice under paragraph 18 of the contract: (a) he could go ahead with the transaction, taking his chances that the Federal tax liens would ultimately be determined not to be applicable, as indeed they later were determined not to be, or (b) cancel the contract and get his deposit back. He did neither, instead he just sat tight, continuing to occupy the apartment for over two years. When it became apparent that the Federal tax liens could not be cleared within a reasonable time, seller's attorney testified that he offered to give the buyer various affidavits showing that the seller was not a resident of Queens County, and when the buyer said that he would not accept that offer, the seller's attorney offered to have the buyer move out of the apartment, pay him $1,000 moving expenses and give him 90 days to move out. The buyer refused. At this point, the seller was justified in terminating the contract and did so stating: "You have refused to remove yourself from the premises and have refused to consummate the sale. Under the circumstances, I have no other alternative than to declare your deposit forfeited, pursuant to the terms of the contract,

and will move for your eviction immediately." Shortly thereafter a series of lawsuits between the parties began. Plaintiff buyer brought an action alleging the seller's default in failing to produce the shares and lease or to clear the shares of liens, encumbrances and adverse interests and demanding that defendant seller be compelled "to specifically perform and carry out the Agreement on his part to be performed", or in the event defendant seller "cannot perform specifically as by the Agreement provided" that plaintiff have judgment for damages. The judgment appealed from resolved the major issues in favor of the seller, dismissed plaintiff's complaint for specific performance, etc., directed that the $4,500 held in escrow by the seller's attorneys be turned over to the seller, adjudicated that the seller was the tenant under the proprietary lease, and directed judgment in favor of the seller for possession of the premises, staying the judgment for six months. We agree with this disposition except that, in the circumstances, we think the buyer should still have his right under paragraph 18 of the contract to recover the deposit, and we, therefore, direct that the seller's attorneys turn over the escrow deposit to the buyer. We note that, even in the absence of an express contractual provision like paragraph 18, it has long been the rule that the vendee of real property who enters into possession pending a contract and who finds that the title to the property is defective cannot simply remain in possession; he must either consummate the contract, taking the risk of the defects, or give up possession (see *Wright v Delafield,* 23 Barb 498, 518, revd on other grounds, 25 NY 266; *Pierce v Tuttle,* 53 Barb 155, 169; *Rhoades v Freeman,* 9 App Div 20, 23). In all other respects we affirm the judgment. Concur—Kupferman, J. P., Birns, Sullivan, Silverman and Bloom, JJ.